*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0050P (6th Cir.)
File Name: 01a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

    *v.*

CEDRIC M. GLOVER,
    *Defendant-Appellee.*

No. 99-5901

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20279—Julia S. Gibbons, Chief District Judge.

Argued: November 29, 2000

Decided and Filed: February 27, 2001

Before: DAUGHTREY and MOORE, Circuit Judges;
CLELAND, District Judge.

————————————

\* Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Tracy L. Berry, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellee. **ON BRIEF:** Tracy L. Berry, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellant. Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellee.

CLELAND, D. J., delivered the opinion of the court in which DAUGHTREY, J., joined. MOORE, J. (pp. 10-11), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

CLELAND, District Judge. Before the Court is a threshold question of jurisdiction to consider the merit of the question sought to be raised, which is whether the trial court erred in limiting restitution to an amount that accrued during the time listed in the indictment.

We conclude that the Government's failure to comply with Federal Rule of Appellate Procedure 3(c) in its notice of appeal is fatal to jurisdiction and we will therefore not reach the merits of this case.

**I. BACKGROUND**

This appeal arises from a criminal charge brought by Appellant United States of America ("the Government"), against Appellee Cedric Glover ("Glover"), who on December 17, 1997, was indicted for willful failure to pay child support obligations from "August 30, 1994, and continuing to on or about December 17, 1997." Glover

resolve the legal issue concerning restitution in a written order to be issued subsequently. Instead, the district court resolved the legal issue regarding restitution on the record in an in-chambers conference held on May 18, 1999, and entered the final judgment two days later. At the in-chambers conference, the district judge announced that she was accepting the defendant's legal argument concerning the determination of restitution, and the Assistant United States Attorney noted her objection to this ruling on the record. No other issue was argued at this conference.

A notice of appeal that specifies that an appeal is taken from "the final judgment" clearly does comply with Rule 3(c)(1). A notice of appeal stating that an appeal is taken from "the judgment," that is filed after the entry of final judgment where there are no district court orders entered subsequent to the final judgment, also satisfies the requirements of Rule 3(c)(1). The notice of appeal in this case takes an appeal "in this Matter" and was filed directly after the district court's final judgment in the case. Under these circumstances the notice of appeal "has the practical effect of designating" the final judgment in the case. *Dillon*, 184 F.3d at 557. As in *Dillon*, "there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward." *Id*. at 558 (quoting Advisory Comm. Notes to 1993 Amendments). Because there can be no other order or judgment to which this notice of appeal refers, I would hold that, in accord with *Dillon*, this notice of appeal meets the jurisdictional requirements of Rule 3(c)(1).

---

### DISSENT

---

KAREN NELSON MOORE, Circuit Judge, dissenting. In *Dillon v. United States*, 184 F.3d 556 (6th Cir. 1999) (en banc), we held that "when there is only one possible appellate forum, and no information or action contrary to the proper forum appears on the face of the papers, the filing of a notice of appeal has the practical effect of 'naming' that forum," despite the absence of a specifically named court, and therefore such a notice of appeal complies with the requirements of Federal Rule of Appellate Procedure 3(c)(1). This case presents a similar problem: the notice of appeal simply "request[s] a Protective Notice of Appeal in this Matter," but does not specify a "judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1). I believe that a fair application of our decision in *Dillon* leads to the conclusion that this notice of appeal, though totally inartful, meets the jurisdictional requirements of Rule 3(c)(1). Therefore I respectfully dissent.

The notice of appeal was filed by the United States in this case on June 18, 1999, directly following the district court's entry of the final judgment on May 20, 1999 imposing the sentence on defendant Cedric Glover and terminating the case. Glover had previously pleaded guilty to the one-count indictment. At a sentencing hearing on August 28, 1998, the district judge indicated that Glover's sentence would include three months in a halfway house and restitution of the arrearage in child support payments but reserved judgment on the amount of the arrearage because of a legal question regarding the allowable scope of restitution under the Child Support Recovery Act. At a subsequent hearing on September 11, 1998, the district judge stated that she would

pleaded guilty on June 9, 1998. In August, he was sentenced to four years and four months of probation, with three months to be served in a half-way house. The court reserved its determination of the proper amount of restitution for further briefing and an additional hearing.

In preparation for the hearing, the United States Probation Office compiled a presentence investigation report, which showed that, as of July 23, 1998, Glover's total arrearage in child support payments was $36,354.34. Glover did not contest this total, but argued that restitution was limited to the amount that had accrued during the time period listed in the indictment. Glover thus calculated that the court could order him to pay no more than $25,911.30.

The district court ruled in Glover's favor, stating that "the restitution has to be tied to the criminal offense . . . . [W]e don't know that the [earlier amounts] . . . meet the requirements in any way for restitution under the criminal statute. We don't know that there has been a willful failure to pay." The district court thus rejected the $36,354.34 figure proposed by the Government and instead ordered Glover to pay the $25,911.30 that had accrued between August 30, 1994, and December 17, 1997. At the conclusion of the restitution hearing, the Government noted its objection to the amount awarded and informed the district court and Glover of its intent to appeal.

Final judgment was entered on May 20, 1999, and the Government timely filed its notice of appeal on June 18, 1999. In full, the notice reads as follows:

> COMES NOW the United States of America by and through Veronica F. Coleman, United States Attorney and her duly authorized Assistant, Tracy Lynn Berry, and gives notice that the United States, Plaintiff in the above-referenced case, hereby request [sic] a Protective Notice of Appeal in this Matter.

On July 12, 1999, we issued an order to show cause why the appeal should not be dismissed for failure to comply with

Rule (3)(c), which requires that a notice of appeal "designate the judgment, order, or part thereof being appealed; and name the court to which the appeal is taken." Fed. R. App. P. 3(c)(1). On July 21, 1999, the Government responded with a "corrected notice of appeal," which was also filed in the district court on July 29, 1999. This second notice of appeal, however, was untimely, *see* Fed. R. App. P. 4(b)(1)(B), and therefore is not before the Court for consideration.

On September 23, 1999, we issued an order regarding the jurisdictional defects in the original notice of appeal, stating that the Government's failure to list the court to which the appeal was taken was not fatal to jurisdiction, *see Dillon v. United States*, 184 F.3d 556 (6th Cir. 1999), but that the effects of its failure to identify the judgment being appealed remained an open question. Accordingly, the first issue presented is whether jurisdiction exists to consider the merits of the case. Because we conclude that jurisdiction is lacking, we will not reach the second issue concerning the amount of restitution.

## II.  DISCUSSION

Federal Rule of Appellate Procedure 3(c)(1) provides that a notice of appeal must

(A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X";

(B) designate the judgment, order, or part thereof being appealed; and

(C) name the court to which the appeal is taken.

Fed. R. App. P. 3(c)(1).

Appeal in this Matter" provides not even a clue as to what the Government seeks on appeal. We refuse to interpret so as to invent the legal strategy of a litigant and conclude that this appeal must be dismissed for lack of jurisdiction. To hold otherwise would propel this Court beyond the realm of its authority and, contrary to the purposes of Rule 3(c), create enormous potential for "inconsistency, vagueness, and an unnecessary multiplication of litigation." *See Minority Employees* 901 F.2d at 1329.

## III.  CONCLUSION

Because the Government failed to designate in its notice of appeal "the judgment, order, or part thereof being appealed," we DISMISS the Government's appeal for lack of jurisdiction.

In *Dillon*, we concluded that "[a]lthough the 1993 amendments were aimed at ameliorating the effect of Rule 3(c)(1)(A), we see no reason why their underlying rationale does not apply with equal force to Rule 3(c)(1)(C)." *Dillon*, 184 F.3d at 558. Therefore, we adopted reasoning parallel to that supporting the 1993 amendments: "When there is only one appellate forum available to a litigant, 'there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward' if, through inadvertence, an appellant has failed to name the court to which the appeal is taken." *Id.* (quoting Fed. R. App. P. 3(c) advisory committee's note). Thus, our holding in *Dillon* was contingent upon the understanding that, like the 1993 amendments, it would not affect the administrative and due process concerns underlying Rule 3(c).

The same cannot be said for excusing the failure to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Unlike the decision *where* to appeal, the decision *what* to appeal is left almost exclusively to the discretion of the appellant. Furthermore, it generally is true that numerous potentially appealable issues have been generated by the district court before an appeal is taken. Whether any of those issues actually will be appealed depends upon a number of factors, ranging from whether the right to appeal was properly preserved on the record to the subjective intent of the parties. Thus, unlike the decision in *Dillon*--loosening as it did the requirement "to name the court to which the appeal is taken"-- the decision urged by the government here--a similar loosening of the requirement "to designate the judgment, order, or part thereof being appealed"--would, if approved, too frequently require this Court to sort through a morass of objective and subjective factors to meditate upon and divine the party's intended appellate targets.

In this case, no amount of liberal construction of the Rules can show that the Government's notice of appeal complied with the requirements of Rule 3(c). To file a "notice that the United States . . . hereby request[s] a Protective Notice of

Compliance with this Rule "is both a mandatory and a jurisdictional prerequisite." *United States v. Means*, 133 F.3d 444, 448 (6th Cir. 1998). Thus, the Supreme Court has held that a court "may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988). This Court, on at least two occasions, has emphasized in a similar vein that "strict obedience" to Rule 3(c) is warranted, even though it "may have harsh results in certain circumstances." *Minority Employees v. Tennessee Dep't of Employment Sec.*, 901 F.2d 1327, 1329 (6th Cir. 1990) (*en banc*); *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 757 (6th Cir. 1999). The Supreme Court has declared it is "convinced that the harshness . . . is 'imposed by the legislature and not by the judicial process.'" *Torres*, 487 U.S. at 318 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)).

These statements serve to reinforce the principle that federal courts are courts of limited jurisdiction with "only such jurisdiction as is defined by the Constitution and granted by Congress." *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir. 1983). In Rule 3(c), Congress has limited this Court's appellate review to issues designated in the notice of appeal. And although Congress has delegated the power to amend the rules to the Supreme Court, subject to congressional review, *see* 28 U.S.C. §§ 2072, 2074, we are without authority to revise them by judicial mandate. If the rules are to be redrafted, that task must be accomplished by those invested with the proper authority.

The requirement that we observe the limits of our jurisdiction coexists with our recognition that "[n]o one wishes to prevent litigants from perfecting their appeals or from having their appeals heard on the merits. [All] would prefer that no appeal be dismissed for failure to comply with the jurisdictional prerequisites of the Federal Rules of Appellate Procedure if that were possible." *Dillon*, 184 F.3d at 560 (Clay, J., dissenting).

This concern, like the former, is also reflected in earlier decisions of both this Court and the Supreme Court. In *Torres*, for example, while holding that the requirements of Rule 3(c) may never be waived, the Supreme Court nonetheless allowed that "a court may construe the Rules liberally in determining whether they have been complied with." 487 U.S. at 317. Thus, in *Dillon*, where the notice of appeal failed, in writing, to name the court to which the appeal was taken, we refused to waive the jurisdictional requirement, but applied a liberal construction to conclude that compliance had occurred. We stated:

> It is not our intention in any way to "waive" the jurisdictional requirement that a notice of appeal designate the court to which the appeal is taken. However, when there is only one possible appellate forum, and no information or action contrary to the proper forum appears on the face of the papers, the filing of a notice of appeal has the practical effect of "naming" that forum.

*Dillon*, 184 F.2d at 558. Thus, by determining that compliance had occurred within the facts presented, we permitted review on the merits without encroaching the Court's jurisdictional limitations.

The Government now urges us to extend *Dillon* one step further and excuse its failure to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). In light of Rule 3(c)'s underlying purposes, however, we are convinced that doing so would nudge this Court across the line of construing the Rules liberally and into the inappropriate realm of amendment by judicial fiat.

Rule 3(c) has two essential purposes. First, as frequently recognized by this Court, the rule is "sufficiently critical in avoiding inconsistency, vagueness and an unnecessary multiplication of litigation." *Minority Employees*, 901 F.2d at 1329; *Universal Mgmt. Servs.*, 191 F.3d at 757. Second, Rule 3(c) serves to satisfy due process concerns by "ensur[ing] that the filing provides sufficient notice to other

parties and the courts." *See Smith v. Barry*, 502 U.S. 244, 248 (1992).

In 1993, Rule 3(c) was amended to conform more tightly to these administrative and due process concerns and to reduce the potential that an appeal might be dismissed where such concerns would not be significantly implicated. The changes were spawned by the Supreme Court's decision in *Torres*, which addressed the requirement of former Rule 3(c)(1)(A) that the notice of appeal "specify the party or parties taking the appeal." 487 U.S. at 314. In *Torres*, the name of one appellant inadvertently had been omitted from the notice of appeal. The Court rejected the argument that the phrase "et al." following the fifteen other appellants' names was sufficient to satisfy the requirements of Rule 3(c)(1)(A). *Torres*, 184 F.3d at 317-18. Accordingly, the Court dismissed for lack of jurisdiction, finding that "petitioner failed to comply with the specificity requirement of Rule 3(c), even liberally construed." *Id*. at 317.

The 1993 amendments to Rule 3(c) were designed "to soften the practical effect of this holding." *Dillon*, 184 F.3d at 558. Thus, the amended Rule 3(c)(1)(A) now provides that "an attorney representing more than one party may describe those parties with such terms as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X.'" Fed. R. App. P. 3(c)(1)(A). Similarly, subsection 3(c)(4) was expanded to state that "an appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4).

The test established by these amendments for determining jurisdiction is "whether it is objectively clear that a party intended to appeal. . . . If a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward." Fed. R. App. P. 3(c) advisory committee's note.